**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARLOS PEGUERO,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:22-cv-00057** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **HERMAN QUAY, et al.,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Pending before the Court is Defendants' motion to dismiss the complaint and/or for summary judgment filed pursuant to Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure.  (Doc. No. 21.)  For the reasons set forth below, the Court will grant their motion.

## I.    BACKGROUND

### A.    Procedural Background

Plaintiff Carlos Peguero ("Plaintiff") is a former federal prisoner who was incarcerated at United States Penitentiary Allenwood ("USP Allenwood") in White Deer, Pennsylvania from March 30, 2021, to February 2, 2022.  (Doc. No. 1 at 2; Doc. No. 29 at ¶¶ 1-2.)  He commenced the above-captioned action on January 11, 2022, while he was incarcerated at USP Allenwood, by filing a complaint pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) ("<u>Bivens</u>"). (Doc. No. 1 at 1.)  He asserts claims under the Fifth and Eighth Amendments to the United States Constitution against the following

Defendants: Herman Quay ("Quay"), the Warden at USP Allenwood; the Health Services Administrator at USP Allenwood, Jody Meehan-Bennett ("Meehan-Bennett"); a physician's assistant at USP Allenwood, Jennifer Holtzapple ("Holtzapple"); and two (2) lieutenants of the Special Housing Unit ("SHU") at USP Allenwood, both of whose names are "[u]nknown" (collectively, "Defendants"). (Id. at 1, 2-3.)  More specifically, Plaintiff asserts: a Fifth Amendment due process claim based upon allegations that he was forced to quarantine in the SHU for twelve (12) days in May of 2021; and Eighth Amendment claims based upon (a) allegations concerning his prison conditions, which he alleges caused his exposure to and contraction of COVID-19, and (b) allegations that Defendants were deliberately indifferent to his serious medical needs by denying him medical care and medication for his chronic low back pain while he was quarantined.  (Id. at 4-6, 8.)

After the Court issued two (2) Administrative Orders (Doc. Nos. 6, 10), Plaintiff filed the appropriate motion for leave to proceed in forma pauperis on March 30, 2022 (Doc. No. 12).   On April 5, 2022, the Court deemed his complaint filed, granted his motion for leave to proceed in forma pauperis, and directed service of his complaint on the named Defendants.  (Doc. No. 13 at 1.)  In that Order, Plaintiff was informed that, if service could not be completed due to his failure to properly name a Defendant or his failure to provide an accurate mailing address for

a Defendant, then he would be required to correct this deficiency and that his failure to comply may result in dismissal of his claims against such Defendants pursuant to Federal Rule of Civil Procedure 4(m).  (Id. at 2.)

Following two (2) extensions of time (Doc. Nos. 17 through 20), Defendants filed a motion to dismiss the complaint and/or for summary judgment on August 10, 2022 (Doc. No. 21), followed by a statement of material facts (Doc. No. 29) and a brief in support thereof (Doc. No. 30).  As reflected by the Court's docket, Plaintiff has not responded to Defendants' motion or sought an extension of time to do so. Thus, Defendants' motion is ripe for resolution.  For the reasons set forth below, Defendants' motion will be granted.

### B.    Factual Background

#### 1.    The Court's Local Rules

In accordance with the Court's Local Rules, Defendants filed a statement of material facts in support of their motion for summary judgment.  (Doc. No. 29.)  As reflected by the Court's docket, however, Plaintiff did not file his own statement of material facts, responding to the numbered paragraphs set forth in Defendants' statement.  Thus, under the Court's Local Rules, Defendants' facts are deemed admitted since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, <u>designated specific facts showing that there is a genuine issue for trial</u>.' 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted) (emphasis added).

<u>See</u> <u>Williams v. Gavins</u>, No. 1:13-cv-0387, 2015 WL 65080, at *5 (M.D. Pa. Jan. 5, 2015), <u>aff'd</u> <u>sub nom.</u> <u>Williams v. Gavin</u>, 640 F. App'x 152 (3d Cir. 2016) (emphasis in original) (citation omitted).  In fact, Defendants advised Plaintiff in their statement of material facts that, "pursuant to Local Rule 56.1, all facts set forth in [their] statement [would] be deemed admitted unless controverted by [Plaintiff] with references to the record supporting his position."  (Doc. No. 29 at 1.)

Thus, the material facts in this Memorandum are derived from Defendants' statement of material facts.  That being said, the Court has conducted a thorough and impartial review of the record in this matter.  To the extent that there are any disputed issues of material fact that are unresolved by Defendants' motion for summary judgment, the Court will expressly note such disputes herein.

### 2.    The Material Facts

Plaintiff entered the Federal Bureau of Prisons ("BOP") custody on September 24, 2007, and first arrived at USP Allenwood on March 30, 2021. (Doc. No. 29 ¶ 1.)  Plaintiff was transferred from USP Allenwood to a Community Corrections Center (Code CCC) on February 2, 2022, and was released from BOP custody on May 18, 2022.  (Id. ¶ 2.)

Defendant Bennett-Meehan is a Commissioned Officer in the United States Public Health Service and has been since May 27, 2008.  (Id. ¶ 4.)  She holds the rank of Lieutenant Commander.  (Id.)  Defendant Bennett-Meehan is detailed to the BOP as the Health Services Administrator at the Federal Correctional Complex Allenwood ("FCC Allenwood"). (Id. ¶ 5.)  As the Health Services Administrator at FCC Allenwood, Defendant Bennett-Meehan does not provide medical care to inmates but has an administrative role where she oversees a staff of physicians, psychiatrists, mid-level practitioners, nurses, and medics.  (Id. ¶ 6.)  In addition, she supervises Assistant Health Services Administrators, conducts performance reviews for some Health Services Staff, manages hiring and firing Health Services Staff, as well as the Health Services Budget, and schedules medical trips, among other tasks for the Health Services Department that are administrative in nature. (Id.)

Plaintiff's prison medical record reveals that he had diagnoses of testicular dysfunction, hypermetropia, esophageal reflux, dermatitis/eczema, elevated blood pressure, viral warts, genital wart, laryngopharyngitis, acute upper respiratory infection, bronchitis, periapical abscess with sinus, tooth position, cellulitis and abscess of mouth, pruritis, and headache. (Id. ¶ 7.) Plaintiff's prison medical records reveal, however, no diagnosis for a lower spine condition. (Id.)

During an Inmate Screening on March 30, 2021, after arriving at USP Allenwood, Plaintiff denied any painful conditions, was not receiving any prescription medications, and was not known to taky any over-the-counter medications. (Id. ¶ 8.) Additionally, during a History and Physical exam performed on April 5, 2021, Plaintiff again denied having a current painful condition, and he had full range of motion of his spine with no tenderness, deformity, or history of low back problems. (Id. ¶ 9.) Plaintiff was also cleared by Health Services to work in Food Service with no restrictions on April 5th, May 19th, and June 21st of 2021. (Id. ¶ 10.)

Plaintiff was quarantined in the SHU between May 19, 2021, and June 1, 2021, due to his exposure to COVID-19. (Id. ¶ 11.) During Plaintiff's quarantine, Health Services staff performed rounds in the SHU twice daily to distribute

prescribed medications.  (Id. ¶ 12.)  There is no record of a complaint to medical staff by Plaintiff while he was quarantined. (Id. ¶ 13.)

On April 5, 2021, Plaintiff refused a vaccination for COVID-19. (Id. ¶ 14.) Plaintiff tested negative for COVID-19 on March 30, April 19, and December 7, 2021. (Id. ¶ 15.)  Plaintiff was placed in isolation in the SHU after he tested positive for COVID-19 on December 14, 2021.  (Id. ¶ 16.)  Plaintiff remained in isolation in the SHU from December 14 until December 24, 2021, where he reported no symptoms of COVID-19 during Health Services screenings performed each day. (Id. ¶ 17.)

During the period of time when Plaintiff was in quarantine and isolation status at USP Allenwood, and when Health Services conducted rounds, inmate complaints such as those requiring medication renewals or inmate complaints requiring over-the-counter medication were handled by visiting the inmate at his cell door.  (Id. ¶ 18.)  Since inmates were not allowed to purchase commissary items during quarantine, any over-the-counter medication needs were provided directly to the inmates by Health Services.  (Id.)

In addition, during Plaintiff's quarantine status at USP Allenwood, quarantined inmates were only removed from their cells for urgent matters that required Health Services staff to evaluate them.  (Id. ¶ 19.)  Treatment for chronic

7

conditions, and even appointments with specialists were scheduled or rescheduled for dates after the quarantine. (Id.)

Plaintiff failed to show up for preventative health visits on June 30, August 4, and October 13, 2021. (Id. ¶ 20.) Plaintiff reported to Health Services for a sick call visit on October 20, 2021, with a complaint of vision problems. (Id. ¶ 21.) Plaintiff had a Preventative Health Visit on October 29, 2021. (Id. ¶ 22.) Plaintiff had an optometry exam on November 4, 2021. (Id. ¶ 23.)

Throughout Plaintiff's incarceration at USP Allenwood (between March 30, 2021, and February 2, 2022), he had no diagnosis for any back condition or back pain for which he received medical treatment or medication. (Id. ¶ 24.) Plaintiff never reported for sick call with a complaint of low back pain while confined at USP Allenwood, nor did he receive medications for any diagnosed medical condition during that time. (Id. ¶ 25.) A search of Plaintiff's medical records between the dates of January 1, 2022, and February 2, 2022, yielded no results for that period of time. (Id. ¶ 26.)

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   And a claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court "accept[s] as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them." See Taksir v. Vanguard Grp., 903 F.3d 95, 96-97 (3d Cir. 2018) (citation and internal quotations omitted).   The court also construes the factual allegations "in the light most favorable to the plaintiff[.]" See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010) (citation and internal quotations omitted).   The court, however, is not required to credit "conclusions of law" or to draw "unreasonable factual inferences." See Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc., 450 F.3d 130, 133 (3d Cir. 2006).

9

Additionally, the United States Court of Appeals for the Third Circuit has outlined a three-step process to determine whether a complaint meets the pleading standard established by <u>Twombly</u> and <u>Iqbal</u>.  <u>See</u> <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 787 (3d Cir. 2016).  First, the court "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'"  <u>See</u> <u>id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 675) (alterations in original).  Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'"  <u>See</u> <u>id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).  And, third, "'[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  <u>See</u> <u>id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).

### B.    Rule 56

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  <u>See</u> Fed. R. Civ. P. 56(a).  "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law."  <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  And, a disputed material fact is "genuine . . . [i]f the evidence

is such that a reasonable jury could return a verdict for the nonmoving party[.]"  See
Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283,
1287-88 (3d Cir. 1991) (citing Anderson, 477 U.S. at 248).

A party moving for summary judgment has the initial burden "of informing
the district court of the basis for its motion, and identifying those portions of [the
record], which it believes demonstrate the absence of a genuine issue of material
fact."  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party's
burden "may be discharged by 'showing'—that is, pointing out to the district court—
that there is an absence of evidence to support the nonmoving party's case."  See id.
at 325.

Once the moving party has met its initial burden, the burden shifts to the
nonmoving party, who may not rest upon the unsubstantiated allegations or denials
of its pleadings and, instead, must go beyond its pleadings, "citing to particular parts
of materials in the record, including depositions, documents, electronically stored
information, affidavits or declarations, stipulations (including those made for
purposes of the motion only), admissions, interrogatory answers, or other materials"
to show a genuine dispute of material fact.  See Fed. R. Civ. P. 56(c); Celotex Corp.,
477 U.S. at 324.  If the nonmoving party "fails to make a showing sufficient to
establish the existence of an element essential to that party's case, and on which that

11

party will bear the burden at trial[,]" summary judgment is proper.  See id. at 322. Summary judgment is also proper if the nonmoving party provides evidence that is "merely colorable" or that "is not significantly probative[.]"  See Gray, 957 F.2d at 1078.

In addition, when deciding a motion for summary judgment, "the court must view all evidence and draw all inferences in the light most favorable to the non-moving party[.]"  See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008) (citing Davis v. Mountaire Farms, Inc., 453 F.3d 554, 556 (3d Cir. 2006)); M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 125 (3d Cir. 2020) (stating that, when reviewing a motion for summary judgment, courts are to "view the evidence in the light most favorable to the non-moving party").

## III.   DISCUSSION

As set forth above, Plaintiff asserts the following Bivens claims in his complaint: a Fifth Amendment due process claim based upon allegations that he was forced to quarantine in the SHU for twelve (12) days in May of 2021; and Eighth Amendment claims based upon (a) allegations concerning his prison conditions, which he claims caused his exposure to and contraction of COVID-19, and (b) allegations that Defendants were deliberately indifferent to his serious medical needs

by denying him medical care and medication for his chronic low back pain while he was quarantined.  (Doc. No. 1 at 4-6, 8.)

In response to Plaintiff's Bivens claims, Defendants have asserted several arguments in support of their motion to dismiss the complaint and/or for summary judgment.  (Doc. Nos. 21, 30.)  Plaintiff, as set forth above, has not filed a brief in opposition to Defendants' motion or filed a response to their statement of material facts.  Thus, Plaintiff is deemed to not oppose Defendants' motion.  That said, the Court now turns to Defendants' arguments.

### A.   Defendant Bennett-Meehan

Initially, Defendants argue that Plaintiff cannot maintain a Bivens claim against Defendant Bennett-Meehan because she was an active duty commissioned officer of the United States Public Health Service at the time of the events giving rise to Plaintiff's claims and is, therefore, entitled to statutory immunity under 42 U.S.C. § 233(a). (Doc. No. 30 at 19-20.)  The Court agrees.

Under 42 U.S.C. § 233(a), the Public Health Service Act, the exclusive remedy arising from claims "for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment," is

13

a Federal Tort Claims Act claim against the United States.  <u>See</u> 42 U.S.C. § 233(a).

Section 233(a) thus "grants absolute immunity to [Public Health Service] officers

and employees for actions arising out of the performance of medical or related

functions within the scope of their employment by barring all actions against them

for such conduct[,]" and limits "recovery for such conduct to suits against the United

States."  <u>See Hui v. Castaneda</u>, 559 U.S. 799, 806 (2010).  The United States

Supreme Court has specifically held that this immunity provided for by Section

233(a) "precludes <u>Bivens</u> actions against individual [Public Health Service] officers

or employees for harms arising out of conduct described in that section."  <u>See id.</u> at

812.

Here, Plaintiff does not dispute Defendant Bennett-Meehan's declaration,

wherein she declares, under the penalty of perjury, that she was a United States

Public Health Service employee during the time of the events giving rise to

Plaintiff's claims in this case.  (Doc. No. 29-2 at 2, ¶ 1 (declaring that she is a

commissioned officer in the United States Public Health Service, detailed to the

BOP, as the Health Services Administrator at FCC Allenwood since 2008).)

Plaintiff also does not dispute that his <u>Bivens</u> claims against Defendant Bennett-

Meehan arose during the performance of her "medical" functions, as contemplated

by Section 233(a).  <u>See</u> 42 U.S.C. § 233(a).

Thus, the Court finds that Section 233(a) bars Plaintiff's <u>Bivens</u> claims against Defendant Bennett-Meehan, a United States Public Health Service employee. As a result, the Court will dismiss Plaintiff's <u>Bivens</u> claims against Defendant Bennett-Meehan, as she is entitled to statutory immunity on such claims. <u>See Hui</u>, 559 U.S. at 805-06; <u>Landis v. Wilson</u>, No. 21-2985, 2022 WL 2128563, at *1 (3d Cir. June 14, 2022) (unpublished) (citing <u>Hui</u> and concluding that the district court had properly dismissed the plaintiff's <u>Bivens</u> claims against the Public Health Service employee since she was protected from such claims under 42 U.S.C. § 233(a)); <u>Dockery v. Maidrans</u>, No. 16-cv-02123, 2018 WL 1726634, at *2 (M.D. Pa. Apr. 10, 2018) (explaining that Section 233(a) precludes <u>Bivens</u> actions against individual United States Public Health Service officers or employees for harms that arise out of the performance of their medical or related functions within the scope of their employment (citations omitted)).

### B. <u>Bivens</u>

Next, Defendants argue that the Court should dismiss Plaintiff's complaint because the United States Supreme Court has never recognized a <u>Bivens</u> remedy for the claims that Plaintiff has asserted therein and because special factors counsel hesitation in extending <u>Bivens</u> to these next contexts. (Doc. No. 30 at 20-37.) The Court agrees.

"In 1871, Congress passed a statute that was later codified at Rev. Stat. § 1979, 42 U.S.C. § 1983."    See Ziglar v. Abbasi, 137 S. Ct. 1843, 1854 (2017) ("Abassi"). This statute "entitles an injured person to money damages if a state official violates his or her constitutional rights."    See id. Congress, however, "did not create an analogous statute for federal officials."    See id.    In other words, Congress did not provide a money damages remedy for persons whose constitutional rights were violated by federal officials.    See id.

However, one-hundred years later in 1971, the United States Supreme Court decided Bivens.    See id.    There, the Supreme Court held that there is an implied cause of action for money damages when a federal official, "acting under color of his authority, conducts an unreasonable search and seizure in violation of the Fourth Amendment."    See Shorter v. United States, 12 F.4th 366, 371 (3d Cir. 2021) (citing Bivens, 403 U.S. at 389, 397)).    The Supreme Court recognized that "the Fourth Amendment does not in so many words" provide for an award of money damages as a consequence of its violation, but nevertheless explained that, "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done."    See Bivens, 403 U.S. at 396 (citation and internal quotation marks omitted).

16

In the decade following <u>Bivens</u>, the Supreme Court implied a cause of action for money damages pursuant to <u>Bivens</u> in two (2) other contexts: one under the Fifth Amendment's due process clause for gender discrimination in the employment context, <u>see</u> <u>Davis v. Passman</u>, 442 U.S. 228, 248-49 (1979); and the other under the Eighth Amendment's prohibition of Cruel and Unusual Punishment Clause in the prison medical care context, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14, 23-25 (1980).  <u>See</u> <u>Bistrian v. Levi</u>, 912 F.3d 79, 89 (3d Cir. 2018); <u>Shorter</u>, 12 F.4th at 371.

In 2017, however, the United States Supreme Court "made clear" in <u>Abbasi</u> that any further expansion of <u>Bivens</u> "is now a disfavored judicial activity."  <u>See</u> 137 S.Ct. at 1857 (citation and internal quotation marks omitted); <u>Hernandez v. Mesa</u>, 140 S.Ct. 735, 741 (2020) (explaining that, after the Supreme Court's decisions in <u>Davis</u> and <u>Carlson</u>, "the Court changed course"); <u>Mack v. Yost</u>, 968 F.3d 311, 318 (3d Cir. 2020) (explaining that "the Supreme Court has consistently refused to expand <u>Bivens</u> actions beyond these three specific contexts"—<u>i.e.</u>, <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>).

Thus, in order to curb the improper expansion of <u>Bivens</u>, the Supreme Court has established a rigorous two (2)-part inquiry for courts to follow when determining whether a <u>Bivens</u> action should be extended to a new context.  <u>See</u> <u>Bistrian</u>, 912 F.3d at 89-90 (citing <u>Abbassi</u>, 137 S.Ct. at 1859-60); <u>Shorter</u>, 12 F.4th at 372.  More

specifically, courts must first determine "whether a case presents a new <u>Bivens</u> context" by asking "[i]f the case is different in a meaningful way from previous <u>Bivens</u> cases decided by [the Supreme] Court[.]" <u>See</u> <u>Ziglar</u>, 137 S.Ct. at 1859. "If a case does not present a new <u>Bivens</u> context, the inquiry ends there, and a <u>Bivens</u> remedy is available." <u>Shorter</u>, 12 F.4th at 372 (citation omitted).

If, however, the case presents a new <u>Bivens</u> context, then courts must next determine "whether any 'special factors counsel[ ] hesitation'" in permitting an extension of the doctrine. <u>See</u> <u>id.</u> (quoting <u>Abbasi</u>, 137 S.Ct. at 1857-58). "There may be many such factors, but two are particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles." <u>Bistrian</u>, 912 F.3d at 90 (citing <u>Abbasi</u>, 137 S.Ct. at 1857-58). Other factors include:

> the potential cost to the government of recognizing a private cause of action, both financially and administratively; whether the judiciary is well suited to weigh those costs; the necessity to deter future violations; whether Congress has already acted in that arena, suggesting it does not "want the Judiciary to interfere"; whether a claim addresses individual conduct or a broader policy question; whether litigation would intrude on the function of other branches of government; and whether national security is at stake.

<u>See</u> <u>id.</u> (quoting <u>Abbasi</u>, 137 S.Ct. at 1856-63).

More recently, on June 8, 2022, the Supreme Court decided <u>Egbert v. Boule</u>, 142 S. Ct. 1793 (2022). There, the Supreme Court clarified the framework that courts are to use before implying a cause action for money damages to a new <u>Bivens</u>

18

context. More specifically, the Supreme Court recognized its precedents that describe the two (2)-part inquiry, but explained that these two (2) parts "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." See id. at 1803. The Supreme Court further explained that, "[i]f there is even a single reason to pause before applying Bivens in a new context, a court may not recognize a Bivens remedy." See id. (citation and internal quotation marks omitted)). Thus, the outcome of Egbert is, essentially, that extending a Bivens remedy to a new context will be unavailable in all but the most unusual of cases. See id. (instructing that "[i]f there is a rational reason" to think that Congress is better equipped to create a damages remedy, "as it will be in most every case, . . . no Bivens action may lie").

Here, Defendants argue that the Court should dismiss Plaintiff's lawsuit because the Supreme Court has never recognized a Bivens remedy for the claims that Plaintiff has asserted in the complaint and because special factors counsel against extending Bivens to these new contexts. (Doc. No. 30 at 20-37.) The Court, having reviewed Defendants' arguments, agrees.

### 1.    Fifth Amendment Claim

Liberally construing the complaint, Plaintiff appears to assert a <u>Bivens</u> claim based upon allegations that his due process rights were violated under the Fifth Amendment to the United States Constitution when he was placed in the SHU to quarantine between May 19, 2021, and June 1, 2021, after he was exposed to COVID-19 by staff.  (Doc. No. 1 at 4.)  Although the Supreme Court has recognized a <u>Bivens</u> action for gender discrimination in violation of the Fifth Amendment, <u>see</u> <u>Davis</u>, 442 U.S. at 230, Plaintiff's claim plainly presents a new <u>Bivens</u> context.  <u>See,</u> <u>e.g.</u>, <u>Bistrain</u>, 912 F.3d at 94-95 (concluding that the plaintiff's Fifth Amendment claim based upon his punitive detention in the SHU represented a new <u>Bivens</u> context).

Thus, because Plaintiff's Fifth Amendment due process claim presents a new context, the Court must determine, under <u>Abbasi</u> and <u>Egbert</u>, whether there are any special factors that counsel hesitation in expanding <u>Bivens</u> to this claim.  <u>See</u> <u>Mack</u>, 968 F.3d at 317.  Ultimately, the Court finds that there are special factors that counsel against doing so.  <u>See</u> <u>Egbert</u>, 142 S.Ct. at 1803 (explaining that such a factor or reason indicates that Congress is better equipped than the Judiciary to "'weigh the costs and benefits of allowing a damages action to proceed'" (quoting <u>Ziglar</u>, 137 S.Ct. at 1858)).  More specifically, the Court finds that extending a <u>Bivens</u> remedy

to Plaintiff's Fifth Amendment due process claim "would unduly encroach on the executive's domain" and violate "serious separation of powers concerns[.]"  <u>See</u> <u>Bistrian</u>, 912 F.3d at 95.

Indeed, Plaintiff's due process claim necessarily implicates the decision-making of prison officials in response to COVID-19, an unprecedented global pandemic.  Deference is, therefore, appropriately afforded to prison officials with respect to such decision-making.  <u>See</u> <u>Turner v. Safley</u>, 482 U.S. 78, 84-85 (1987) (recognizing that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform[,]" that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government[,]" and that this "task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint" (internal citation and internal quotation marks omitted)); <u>Bistrian</u>, 912 F.3d at 94 (explaining that "[t]he warden and other prison officials have—and indeed must have—the authority to determine detention policies, to assess the endless variety of circumstances in which those policies may be implicated, and to decide when administrative detention is [necessary] and for how long").

Additionally, "[b]esides those serious separation of powers concerns, recognizing a <u>Bivens</u> remedy [here] would likely cause an increase of suits by inmates, increased litigation costs to the government, and . . . burdens on individual prison employees to defend such claims." <u>See</u> <u>Bistrian</u>, 912 F.3d at 95. "Heeding the reasoning in <u>Abbasi</u>, [courts] must be reluctant to 'establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation.'" <u>See</u> <u>id.</u> (quoting <u>Abbasi</u>, 137 S.Ct. at 1858).

Thus, the Court finds that these special factors counsel against permitting an expansion of <u>Bivens</u> to Plaintiff's Fifth Amendment due process claim. <u>See</u> <u>Bistrian</u>, 912 F.3d at 94-95 (declining to extend <u>Bivens</u> to a federal inmate's Fifth Amendment claim that was based on punitive detention in the SHU). Accordingly, the Court will grant Defendants' motion for summary judgment on Plaintiff's Fifth Amendment due process claim.

### 2.    Eighth Amendment Conditions-of-Confinement Claim

In addition, Plaintiff asserts <u>Bivens</u> claims based upon allegations that his rights under the Eighth Amendment to the United States Constitution were violated in connection with his prison conditions at USP Allenwood, which he alleges caused his exposure to and contraction of COVID-19. (Doc. No. 1 at 4-6, 8.) Although the Supreme Court has recognized a <u>Bivens</u> action for inadequate medical care in

22

violation of the Eighth Amendment, see Carlson, 446 U.S. at 23-25, the Court finds that Plaintiff's Eighth Amendment claim presents a new Bivens context.  See, e.g., Mammana v. Barben, 856 F. App'x 411, 415 (3d Cir. 2021) (unpublished) (concluding that the plaintiff's Eighth Amendment claim based upon the unconstitutional conditions of his confinement presented a new Bivens context); Walker v. United States, No. 21-cv-01881, 2022 WL 1472872, at *4 (M.D. Pa. May 10, 2022) (stating that "[t]he Supreme Court has never extended Bivens to claims against federal prison officials regarding conditions of confinement").

Thus, because Plaintiff's Eighth Amendment conditions-of-confinement claim presents a new context, the Court must determine, under Abbasi and Egbert, whether there are any special factors that counsel hesitation in expanding Bivens to this claim.  See Mack, 968 F.3d at 317.  Ultimately, the Court finds that there are special factors that counsel against expanding Bivens to this claim.  See Egbert, 142 S.Ct. at 1803 (explaining that such a factor or reason indicates that Congress is better equipped than the Judiciary to "'weigh the costs and benefits of allowing a damages action to proceed'" (quoting Ziglar, 137 S.Ct. at 1858)).

More specifically, the Court finds that extending a Bivens remedy to Plaintiff's Eighth Amendment conditions-of-confinement claim "would step well into the lawmaking privilege delegated only to Congress, and well over the bounds

of [the Court's] limited constitutional power." See Mammana, 856 F. App'x at 415. As explained by the United States Court of Appeals for the Third Circuit, albeit in a non-precedential opinion, neither the Supreme Court nor any circuit court has extended Bivens to claims against federal prison officials concerning the allegedly unconstitutional conditions of a prisoner's confinement. See id. Again, "[h]eeding the reasoning in Abbasi, [the Court] must be reluctant to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation." See Bistrian, 912 F.3d at 95 (citation and internal quotation marks omitted); Egbert, 142 S. Ct. at 1800 (stating that Supreme Court precedent has "made clear that, in all but the most unusual circumstances," Bivens should not be recognized in new contexts).

Additionally, the Court finds that the BOP's Administrative Remedy Program provides an alternative process for Plaintiff's Eighth Amendment conditions-of-confinement claim. See Walker, 2022 WL 1472872, at *4. This process permits prisoners, who allege unconstitutional conditions of their confinement, to file grievances in order to correct those conditions. See 28 C.F.R. § 542.10 (providing that "[t]he purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement"); Egbert, 142 S. Ct. at 1806 (explaining that alternative remedies for aggrieved parties

24

"independently foreclose a <u>Bivens</u> action"); <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 69 (2001) (stating that, "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability").  Thus, "when alternative methods of relief are available," as they are here, "a <u>Bivens</u> remedy usually is not."  <u>See</u> Ziglar, 137 S. Ct. at 1863.

As a result, the Court finds that these special factors counsel against permitting an expansion of <u>Bivens</u> to Plaintiff's Eighth Amendment conditions-of-confinement claim.  <u>See</u> <u>Mammana</u>, 856 F. App'x at 415 (declining to extend <u>Bivens</u> to the Eighth Amendment conditions-of-confinement context).  Accordingly, the Court will grant Defendants' motion for summary judgment on Plaintiff's Eighth Amendment conditions-of-confinement claim.

### 3.    Eighth Amendment Medical Care Claim

Finally, Plaintiff asserts an Eighth Amendment claim based upon allegations that BOP staff were deliberately indifferent to his serious medical needs by denying him medical care and medication for chronic low back pain while he was quarantined in the SHU.  (Doc. No. 1 at 4-6.)  Of the three (3) contexts in which the United States Supreme Court has recognized <u>Bivens</u> claims (<u>i.e.</u>, <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>), <u>Carlson</u> is the only somewhat analogous context, as it involved the Eighth Amendment's prohibition of cruel and unusual punishment in the prison medical

25

care context. Ultimately, however, the Court finds that Plaintiff's Eighth Amendment claim is markedly different from the Eighth Amendment claim in Carlson and thus concludes that it presents a new Bivens context.

In Carlson, the respondent had brought suit on behalf of the estate of her deceased son, alleging that he suffered personal injuries from which he died because the petitioners, federal prison officials, violated in part his Eighth Amendment rights. See id. at 16.  More specifically, the respondent alleged as follows:

> petitioners, being fully apprised of the gross inadequacy of medical facilities and staff at the Federal Correction Center in Terre Haute, Ind., and of the seriousness of [the prisoner's] chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital.

See id. at 16 n.1.  These factual allegations in Carlson have no similarity here.

In the instant complaint, Plaintiff alleges that he suffers from chronic low back pain resulting from two (2) herniated discs, scoliosis, and nerve damage.  (Doc. No. 1 at 4.)  Even if the Court accepted Plaintiff's allegations as true, that he suffers from

such back pain (Doc. No. 1 at 4-6),[1] the Court would still find that Plaintiff's Eighth Amendment claim against Defendants arises in a new <u>Bivens</u> context.

In particular, the Court finds that Plaintiff's Eighth Amendment claim does not involve a medical life-threatening emergency, as did the Eighth Amendment claim in <u>Carlson</u>. Rather, Plaintiff's claim involves an alleged chronic and non-life-threatening condition.  This is materially distinct from the factual allegations in <u>Carlson</u>, where the prison officials' failure to address the prisoner's serious medical needs resulted in his death.  In other words, the <u>Carlson</u> Court extended an implied cause of action for money damages pursuant to <u>Bivens</u> where the alleged deliberate indifference of prison officials was most serious; it resulted in a fatality of a prisoner.

Accordingly, while <u>Carlson</u> and the instant matter involve similar allegations of Eighth Amendment violations based upon deliberate indifference to serious medical needs and, thus, arguably present "almost parallel circumstances[,]" these

---

[1]  As reflected by the undisputed material facts in this matter, Plaintiff's complaints of his alleged back condition are not contained in his medical record.  Indeed, and as argued by Defendants, throughout Plaintiff's incarceration at USP Allenwood, he had no diagnosis for any back condition or back pain that would have required medical treatment and/or medication. And, as further argued by Defendants, Plaintiff never reported to sick call at USP Allenwood for medical complaints of lower back pain.  In other words, the summary judgment record before the Court does not establish or raise a genuine dispute of material fact that Plaintiff's alleged back condition had been previously diagnosed by BOP staff or that he had been receiving any medical treatment and/or medication for this alleged condition.

"superficial similarities" are not enough for the Court to conclude that Plaintiff's claim comes within the same <u>Bivens</u> context of <u>Carlson</u>. <u>See Egbert</u>, 142 S.Ct. at 1805 (disregarding similar allegations of excessive force that presented "almost parallel circumstances or a similar mechanism of injury" (citation and internal quotation marks omitted)).

Thus, because Plaintiff's Eighth Amendment claim presents a new <u>Bivens</u> context, the Court must determine, under <u>Abbasi</u> and <u>Egbert</u>, whether there are any special factors that counsel hesitation in expanding <u>Bivens</u> to this claim. <u>See Mack</u>, 968 F.3d at 317. Ultimately, the Court finds that there are special factors that counsel against doing so. <u>See Egbert</u>, 142 S.Ct. at 1803 (explaining that such a factor or reason indicates that Congress is better equipped than the Judiciary to "'weigh the costs and benefits of allowing a damages action to proceed'" (quoting <u>Ziglar</u>, 137 S.Ct. at 1858)).

More specifically, the Court finds that "'the Judiciary is not undoubtedly better positioned than Congress to authorize a damages action' in the context of chronic medical care in federal prisons." <u>See Washington</u>, 2022 WL 3701577, at *6 (quoting <u>Egbert</u>, 142 S.Ct. at 1805). Indeed, "[t]he provision of chronic medical care is a specialized activity requiring a high degree of training and qualification. In the prison context, the provision of such care is made all the more multifaceted because

28

it must coincide with the security demands and inherent limitations of the custody setting."  See id.

Additionally, and as already set forth above, the BOP's Administrative Remedy Program provides an alternative process for Plaintiff's Eighth Amendment medical care claim.  See 28 C.F.R. § 542.10 (providing that "[t]he purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement"); Egbert, 142 S. Ct. at 1806; Malesko, 534 U.S. at  69.  Thus, where, as here, alternative methods of relief are available for Plaintiff, a Bivens remedy is not.  See Ziglar, 137 S.Ct. at 1863.

### 4.    Conclusion as to Plaintiff's Bivens Claims

Accordingly, based upon the framework set forth by Supreme Court precedent, the Court finds that Plaintiff's Bivens claims arise in next contexts.  The Court further finds that there are special factors and sound reasons to find that Congress is better equipped than the Judiciary to "weigh the costs and benefits of allowing a damages action to proceed."  See Egbert, 142 S.Ct. at 1803 (citation and internal quotation marks omitted).  Accordingly, because there are such factors and reasons to defer to Congress here, the Court will refrain from creating a Bivens remedy for Plaintiff's claims.  See id. (instructing that "even a single sound reason

29

to defer to Congress is enough to require a court to refrain from creating such a remedy" (citation and internal quotation marks omitted)).[2]

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss and/or for summary judgment will be granted.  (Doc. No. 21.)  An appropriate Order follows.


Dated: March 8, 2023                    s/ Sylvia H. Rambo
                                        SYLVIA H. RAMBO
                                        United States District Judge

---

[2] In light of this ruling, the Court need not address Defendants' remaining arguments. (Doc. No. 30 at 38-51.)